PLEISS SITAR MCGRATH GATES & AJELLO
E-MAIL: SERVICE@PLEISSLAW.COM
LAURA K. SITAR, STATE BAR NO. 195806
E-MAIL: LSITAR@PLEISSLAW.COM
KRISTINA M. EDRINGTON. STATE BAR NO. 324619
E-MAIL: KEDRINGTONA@PLEISSLAW.COM
2875 MICHELLE DRIVE, SUITE 150
IRVINE, CA 92606
TELE: (949) 788-1790
FAX: (949) 788-1799

Attorneys for Defendants, RECHE CANYON REGIONAL and REHAB CENTER
ARK POST ACUTE NETWORK, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| TERESA BERGLOF, by and through ANDREW E. V. EVERSON as Personal Representative of the Estate of TERESA BERGLOF; KENNETH BERGLOF, Individually and as Heir of TERESA BERGLOF, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>RECHE CANYON REGIONAL REHAB CENTER, ARK POST ACUTE NETWORK, LLC, and DOES 1 through 75, inclusive,<br><br>Defendants. | Case No:  **<br><br>[San Bernardino Superior Court Case No.: CIVSB2300062]<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(a) [DIVERSITY]** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendant, ARK POST ACUTE NETWORK, LLC ("Ark") hereby removes this action from the Superior Court of the State of California, County of San Bernardino – San Bernardino Justice Center, to the United States District Court for the Central District of California and sets forth in support of their Notice of Removal of Action the following:

1. On January 13, 2023, an action was commenced in the Superior Court of the State of California, County of San Bernardino – San Bernardino Justice

1

1   Center, as Case No.: CIVSB2300062. True and correct copies of the Complaint (the

2   "Complaint") and Summons ("Summons") in that action are attached hereto as

3   **Exhibits A** and **B**, respectively.

4       2.  On July 11, 2023, Plaintiffs, TERESA BERGLOF, by and through

5   ANDREW E.V. EVERSON as Personal Representative of the Estate of TERESA

6   BERGLOF, and KENNETH BERGLOF, Individually and as Heir of TERESA

7   BERGLOF, Deceased ("Plaintiffs") served Ark, which is a limited liability

8   company ("LLC"), via a signed and returned a Notice and Acknowledgement of

9   Receipt.

10  **THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED**

11      3.  The Complaint alleges that Ark caused Plaintiffs to suffer injuries and

12  damages based upon five interrelated causes of action for: (1) elder abuse and

13  neglect; (2) willful misconduct; (3) wrongful death; (4) negligence; and (5) violation

14  of patient's rights. Under California law, the Complaint may not state the amount

15  of damages being claimed, although it is undisputed that more than $75,000 is being

16  sought. (Cal. *Code of Civ. Proc.* § 425.10(b); see *Schwab v. Rondel Homes, Inc.*

17  (1991) 53 Cal.3d 428, 431.)

18              **COMPLETE DIVERSITY EXISTS**

19      4.  Ark is an LLC and none of its members are residents or citizens of the

20  State of California. (*Carden v. Arkoma Associates* (1990) 494 U.S. 185, 195;

21  *Johnson v. Columbia Properties Anchorage, L.P.* (9th Cir. 2006) 437 F.3d 894,

22  899.)

23      5.  Plaintiffs are residents and citizens of the State of Minnesota. (See

24  Exhibit A at ¶¶ 2-3.)

25      6.  Codefendant, CAMBRIDGE SIERRA HOLDINGS, LLC, dba

26  RECHE CANYON REGIONAL REHAB CENTER ("Reche Canyon") is an LLC

27  and none of its members are either residents or citizens of the State of California.

28  Reche Canyon has four members; 1) Dane Mgmt, LLC, a Louisiana limited liability

PLEISS SITAR
McGRATH GATES & AIELLO

2

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) [DIVERSITY]

company whose only member is an individual who is a resident of Baton Rouge, Louisiana; 2) HHC16, LLC, a Florida limited liability company whose only member is an individual who is a resident of Clearwater Florida; 3) Desoto Health Management, a Florida limited liability company whose only member is an individual who is a resident of Tampa, Florida, and 4) an individual whose residence is Bradenton, Florida. (*Thermoset Corporation v. Building Materials Corp. of America et al*, 2017 WL 816224 (11th Cir., March 2, 2017).) Thus, for purposes of diversity jurisdiction, Reche Canyon is a citizen of Louisiana and Florida.

7.  The Complaint also names defendants Does 1 through 75. Pursuant to 28 U.S.C. §1441(a), the citizenship of these defendants is disregarded.

8.  This is a civil action over which the court has original jurisdiction under the provisions of 28 U.S.C. §1332 and may be removed to this court by Ark pursuant to the provisions of 28 U.S.C. §1441(a) because it is a civil action between citizens of different states and the matter in controversy herein exceeds the sum of $75,000 exclusive of interests and costs.

## THE OTHER REQUIREMENTS FOR REMOVAL ARE MET

9.  This Notice of Removal is being filed within thirty (30) days of service upon Ark of the Complaint and Summons. Thus, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

10. Removal to this Court is proper as the Superior Court of the State of California, County of San Bernardino – San Bernardino Justice Center, where this action was originally filed, is located within this District and in particular, the Southern Division of this Court, located at 3470 Twelfth Street, Riverside, California 92501-3801.

11. Counsel for Ark certifies that it will file a copy of this Notice of Removal with the clerk of the Superior Court of the State of California, County of San Bernardino – San Bernardino Justice Center, and give notice of same to counsel parties and counsel of record.

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) [DIVERSITY]

MUNI-9795 / 1168984.1

PLEISS STIAR
MCGRATH GATES & AIELLO

1

## **NO WAIVER**

2              12.Nothing in this Notice of Removal shall be interpreted as a waiver or

3   relinquishment of Ark's right to assert any defense, right, or affirmative matter.

4

5   Dated:  August 10, 2023          PLEISS SITAR MCGRATH GATES & AJELLO

6

7                                  By:_____

8                                    LAURA K. SITAR
KRISTINA M. EDRINGTON
9                                    Attorneys for Defendant,
CAMBRIDGE SIERRA HOLDINGS,
10                                  LLC, DBA RECHE CANYON
REGIONAL REHAB CENTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) [DIVERSITY]

EXHIBIT "B"

COPY

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

RECHE CANYON REGIONAL REHAB CENTER, ARK POST ACUTE NETWORK LLC, and DOES 1 through 75, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

TERESA BERGLOF, by and through ANDREW E. V. EVERSON as Personal Representative of the Estate of TERESA BERGLOF; (Add'l Pty attachment form is attached)

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JAN 13 2023

By
JACQUELINE HARNESS, DEPUTY

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Bernardino Justice Center<br><br>247 West Third St, San Bernardino, CA 92415 | CASE NUMBER:<br>*(Número del Caso):* **CIV SB 2 3 0 0 0 6 2** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ben Yeroushalmi (SBN 232540), 9100 Wilshire Blvd., Suite 240W, Beverly Hills, CA 90212, 310-623-1926

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | JAN 13 2023 | Clerk, by JACQUELINE HARNESS<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

COPY

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Cambridge Sierra Holdings, LLC dba Reche Canyon Regional Rehab Center (erroneously sued as "Reche Canyon Regional Rehab Center")

    under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 2/1/23

Page 1 of 1

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

SUM-200(A)

| SHORT TITLE: Berglof, et al. v. Reche Canyon Regional Rehab Center, et al. | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✔] Plaintiff      [ ] Defendant      [ ] Cross-Complainant      [ ] Cross-Defendant

KENNETH BERGLOF, Individually and as Heir of TERESA BERGLOF, deceased

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

EXHIBIT "A"

COPY

**YEROUSHALMI & YEROUSHALMI***
Ben Yeroushalmi (SBN 232540)
Tanaz Rostami (SBN 253184)
9100 Wilshire Blvd., Suite 240W
Beverly Hills, CA 90212
Tel: 310-623-1926
Fax: 310-623-1930
Attorneys for Plaintiff

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

**JAN 13 2023**

BY _____
JACQUELINE HARNESS, DEPUTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN BERNARDINO – SAN BERNARDINO JUSTICE CENTER**

TERESA BERGLOF, by and through
ANDREW E. V. EVERSON as Personal
Representative of the Estate of TERESA
BERGLOF; KENNETH BERGLOF,
Individually and as Heir of TERESA
BERGLOF, deceased,

        Plaintiffs,

    vs.

RECHE CANYON REGIONAL REHAB
CENTER, ARK POST ACUTE NETWORK
LLC, and DOES 1 through 75, inclusive,

        Defendants.

CASE NO: **CIV SB 2 3 0 0 0 6 2**

**COMPLAINT FOR DAMAGES**

1) Elder Abuse and Neglect (Pursuant to the
   Elder Adult and Dependent Adult Civil
   Protection Act - Welfare and Institution Code
   §§ 15600, *et seq.*)
2) Willful Misconduct
3) Wrongful Death
4) Negligence
5) Violation of Patient's Rights (Pursuant to
   Health & Safety Code § 1430)

**DEMAND FOR JURY TRIAL**

*An Association of
Independent Law Corporations

1

**COMPLAINT**

Plaintiffs TERESA BERGLOF, by and through ANDREW E. V. EVERSON as Personal Representative of the Estate of TERESA BERGLOF; KENNETH BERGLOF, Individually and as Heir of TERESA BERGLOF, deceased ("Plaintiffs"), based on information and belief and the investigation of counsel, except for information based on personal knowledge, hereby allege as follows:

## GENERAL ALLEGATIONS

1. Plaintiffs bring this case by and through the Personal Representative of the Estate of TERESA BERGLOF, who is ANDREW E. V. EVERSON, the natural nephew of TERESA BERGLOF, deceased, as well as KENNETH BERGLOF, Individually and as Heir of TERESA BERGLOF, deceased. Plaintiffs bring this action in two forms: (a) a survivor action pursuant to Code Civ. Proc. § 377.20 (asserting claims which could have been brought by Decedent during her lifetime), and (b) a wrongful death action pursuant to Code Civ. Proc. § 377.60 (asserting the wrongful death claim on behalf of Decedent's statutory heir).

2. Plaintiff ANDREW E. V. EVERSON is a resident of the city of Minneapolis, County of Hennepin, State of Minnesota. In making the claims herein, Plaintiff ANDREW E. V. EVERSON brings this action on behalf of the decedent, TERESA BERGLOF ("TERESA" or "Mrs. BERGLOF"), who died on February 4, 2022, pursuant to ANDREW E. V. EVERSON's appointment as Administrator and Personal Representative of the estate of TERESA BERGLOF by the Superior Court of California, County of San Bernardino on April 7, 2022 (Case No. PROSB2200526).

3. Plaintiff KENNETH BERGLOF is a resident of the city of Lake Elmo, County of Washington, State of Minnesota. In making the claims herein, and pursuant to Code of Civil Procedure § 377.60, et seq., and Welfare and Institutions Code § 15657.3(d), Plaintiff KENNETH BERGLOF brings this action on behalf of himself for the wrongful death of his wife, the decedent, TERESA BERGLOF, who died on February 4, 2022.

4. Mrs. BERGLOF was admitted to the care of the RECHE CANYON REGIONAL REHAB CENTER skilled nursing facility so as to secure and receive appropriate medical and custodial care and treatment as was reasonable and necessary relative to her then-existing medical condition, health and well-being.

2

**COMPLAINT**

In owning, operating, managing, and/or supervising the subject facility, Defendants and each of them held themselves out to the general public, and Mrs. BERGLOF in particular, as being in compliance with all applicable federal and state laws.

5. Defendant RECHE CANYON REGIONAL REHAB CENTER ("RECHE CANYON") is a 156-bed skilled nursing facility licensed by the State of California, and was at all times doing business at 1350 Reche Canyon Road, Colton, CA 92324. Plaintiffs are informed and believe, based on documents filed by RECHE CANYON with the California Department of Public Health and Medicare, that RECHE CANYON is owned by Defendant ARK POST ACUTE NETWORK LLC.

6. Plaintiffs are informed and believe, and based thereon allege, that all times mentioned herein Defendant ARK POST ACUTE NETWORK LLC was and is the direct owner of RECHE CANYON and made administrative and managerial decisions for RECHE CANYON operations. Defendant ARK POST ACUTE NETWORK LLC is a nationwide provider of long-term healthcare services and management services and operates multiple skilled nursing operations across the country, including RECHE CANYON.

7. Plaintiffs are informed and believe and thereon allege that Defendants are those persons or entities whose conduct caused the injuries and damages alleged herein. Plaintiffs further allege that at all times relevant hereto there was a such a unity of interest and ownership between Defendants such that the individual distinctions between them had ceased and that the facts as alleged herein are such that an adherence to the fiction of the separate existence of defendants would, under the particular circumstances alleged herein, sanction a fraud and/or promote injustice. On information and belief, at all times mentioned herein, each defendant was the agent, partner, joint venturer, representative, and/or employee of the remaining defendants and was acting within such agency, partnership, joint venture or employment. In engaging in the conduct described below, Defendants were all acting with the knowledge, consent, approval, and/or ratification of their co-defendants.

8. The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants named herein as DOES 1 through 75 inclusive are presently unknown to Plaintiffs. On information and belief, each of the defendants designated as a "DOE" is legally responsible for the events or injuries alleged herein, and proximately caused the damages described. Plaintiffs will amend this complaint to

3

**COMPLAINT**

allege their true names and capacities when ascertained. Plaintiffs will refer to all Defendants, including DOES 1 through 75, collectively as "Defendants."

## THE DEFENDANTS ARE ALTER-EGOS OF ONE ANOTHER AND FORM PART OF A SINGLE ENTERPRISE

9.  There is sufficient unity of interest and ownership among Defendants, and between each of them, such that the acts of one are for the benefit and can be imputed to the acts of the others. Defendants, and each of them, operated in such a way as to make their individual identities indistinguishable, and they are, therefore, the mere alter-egos and/or managing agents of one another. While Defendants have formed multiple corporations, LLCs, and limited and general partnerships, they in fact act as one entity and, ultimately, are all completely owned and/or controlled by Defendant ARK POST ACUTE NETWORK LLC. Defendants either make or approve key decisions concerning RECHE CANYON's day-to-day operations.

10. Documents filed by or on behalf of RECHE CANYON with the California Department of Public Health and Medicare state that RECHE CANYON is owned/operated by Defendant ARK POST ACUTE NETWORK LLC. RECHE CANYON is not an independent entity, and is instead owned, controlled, and operated by ARK POST ACUTE NETWORK LLC. Defendants created a complex web of companies to conceal the true owners and assets of RECHE CANYON from liability and judgment.

11. Plaintiffs are informed and believe, and based thereon allege, that all transactions between Defendants are part of one general ledger. All Defendants can be traced back through the various ownership trails as being ultimately be and/or controlled by Defendant ARK POST ACUTE NETWORK LLC.

12. Defendants were the knowing agents and/or alter-egos of one another, and each of their officers, directors, and managing agents directed, approved and/or ratified all of the acts and omissions of each of the other, and their agents and employees, thereby making each of them vicariously liable for the acts and omissions of their co-defendants, agents and employees, as is more fully alleged herein. Moreover, through their managing agents, Defendants, and each of them, agreed, approved, authorized, ratified and/or conspired to commit all of the acts and omissions alleged herein.

4

**COMPLAINT**

13. At all relevant times, Defendants, through their managers, directors, officers and other agents created and authorized the budgets, policies and procedures that its employees were required to implement and follow. At all relevant times, Defendants, and each of their tortious acts and omissions, as alleged herein, were done in concert with one another in furtherance of their common design and agreement to accomplish a particular result, namely maximizing gross revenues from the operation of their facilities at the expense of patient care.

14. At all relevant times, Defendants, by their acts and omissions as alleged herein, operated pursuant to an agreement, with a common purpose and community of interest, with an equal right of control, and subject to participation in profits and losses, as further alleged herein, such that they operated a joint enterprise or joint venture, subjecting each of them to liability for the acts and omissions of each other.

## TO NOT TREAT DEFENDANTS AS ALTER-EGOS
## WOULD WORK AN INJUSTICE

15. Injustice will result if the Court does not disregard the fiction of the separate corporate entities that Defendants have constructed to conceal and misrepresent the identity of the responsible party and the ultimate ownership, control, and operation of RECHE CANYON.

16. RECHE CANYON is not an independent entity, and is owned, controlled and operated by ARK POST ACUTE NETWORK LLC and its related companies. The complex web of entities set up by ARK POST ACUTE NETWORK LLC only serves to conceal the true owners, controllers, and operators of the RECHE CANYON facility. Plaintiff is informed and believes, and based thereon alleges, that Defendants created the corporate maze set forth above for the express purpose of allowing those who actually make the decisions regarding care at RECHE CANYON to avoid responsibility and so that those who are actually responsible for the lack of care at the facility can avoid liability.

17. The ARK POST ACUTE NETWORK LLC network reportedly operates several nursing homes and elder care facilities across the country under as many different names, and each is managed and owned by parent companies that also have different names. This allows ARK POST ACUTE NETWORK LLC to operate below the radar. The name ARK POST ACUTE NETWORK LLC does not appear in the

5

**COMPLAINT**

Department of Public Health's database of licensed nursing homes. ARK POST ACUTE NETWORK LLC's complex web of companies serves to conceal the nursing homes' ownership and shield its companies, its owner, and its assets from lawsuits. It also potentially allows ARK POST ACUTE NETWORK LLC to profit at multiple stages of his corporation's convoluted healthcare delivery system.

18. Through this scheme, and for financial motivations, all actors conspire in unity to deprive vulnerable nursing home patients of the quality care necessary to safeguard against health and safety hazards. Additionally, ARK POST ACUTE NETWORK LLC nursing homes are essentially operated by persons and entities who are not licensed healthcare providers, such as Defendants' related management and administrative services companies, which causes these facilities to place vulnerable patients at exceedingly high risk for harm. Injustice will result if these non-healthcare individuals and entities are allowed to hide behind the guise of a "licensed healthcare provider" when patients inevitably suffer preventable harm.

## DEFENDANTS ARE PART OF A CONSPIRACY TO VIOLATE THE LAW IN ORDER TO INCREASE PROFITS

19. Plaintiffs are informed and believe, and based thereon allege, that at all times relevant herein, the Defendants, and each of them, acting as agents and/or alter-egos and/or co-conspirators, conceived and implemented a plan to wrongfully increase their business profits at the expense of residents such as Mrs. BERGLOF. Integral to this plan was the custom and practice of the Defendants siphoning healthcare funds intended for patient care from RECHE CANYON through "related party" transactions, such as payments to ARK POST ACUTE NETWORK LLC-owned companies. As a result, the RECHE CANYON facility was left dangerously underfunded, and there were simply not enough resources at RECHE CANYON, including staff, equipment, and supplies, to meet the needs of all of the residents. Particularly, the Defendants intentionally staffed RECHE CANYON with an insufficient number of care personnel, many of whom were not properly trained nor qualified to care for the elders whose lives were entrusted to them, solely for financial gain. This understaffing and lack of training was designed

6

COMPLAINT

1    to reduce labor costs and increase profits, resulting in the physical abuse and neglect on many residents

2    at the facility, including Mrs. BERGLOF.

3    20. Plaintiffs are informed and believes and based thereon alleges that despite millions of dollars in savings

4    through understaffing, RECHE CANYON was undercapitalized for its risk exposure, and that the

5    reason for the undercapitalization of RECHE CANYON is that its profits are stripped away by the

6    multiple other ARK POST ACUTE NETWORK LLC-owned/controlled entities, which are disguised as

7    "expenses" being paid directly to ARK POST ACUTE NETWORK LLC-owned companies, including

8    the Defendants. Despite millions of dollars in savings through understaffing and $27,426,557 in total

9    health care revenue, the last available cost report from California's Office of Statewide Health Planning

10    and Development ("OSHPD") for the budget year 2021 indicated a net income of only $198,628.

11    RECHE CANYON is undercapitalized for its risk exposure, and Plaintiffs are informed and believe,

12    and based thereon allege, that the reason for the undercapitalization of RECHE CANYON is that its

13    profits are stripped away by the multiple other ARK POST ACUTE NETWORK LLC-

14    owned/controlled entities. For example, according to OSHPD reports for the 2021 reporting period,

15    $1,371,209 was spent on "management fees," and a total of $675,408 was spent on "home office costs,"

16    which was paid directly to ARK POST ACUTE NETWORK LLC. Plaintiffs are informed and believe,

17    and based thereon allege, that these are the expenses being paid directly to ARK POST ACUTE

18    NETWORK LLC, and are simply more paper transactions by Defendants to strip funds from the

19    RECHE CANYON facility, leaving it understaffed, undercapitalized, and unable to treat its residents

20    with dignity and protect them from health and safety hazards.

21    21. RECHE CANYON's intentional undercapitalization hamstrung any possibility for the facility to hire

22    sufficient qualified staff to care for its residents, because, due to disbursements to ARK POST ACUTE

23    NETWORK LLC-owned companies, it simply had insufficient funds to do so. For example, OSHPD

24    reports that RECHE CANYON had a 59.86% turnover percentage for all employees, and a 64.16%

25    rate for Direct Caregiver employees. The Defendants knew at the time that the failure to have sufficient

26    staff at RECHE CANYON to meet the needs of the residents was a violation of both state and federal

27    law, was a violation of patient rights, and could and would unreasonably endanger residents.

28    Nevertheless, the Defendants conspired to inadequately staff the RECHE CANYON facility in order to

**COMPLAINT**

1  increase profits.

2  22. Defendants' chronic practice of understaffing negatively impacted the quality of care at RECHE

3  CANYON. Medicare reports state that the overall "quality of resident care" rating for RECHE

4  CANYON is only three-out-of-five stars. Specifically, according to Medicare, the RECHE CANYON

5  facility's "staffing" rating are two-out-of-five stars, or "Below Average." The average total number of

6  nursing hours per day at RECHE CANYON is well below the state and national averages:

7

8
9
10

|  | **RECHE CANYON** | **CALIFORNIA AVERAGE** | **NATIONAL AVERAGE** |
|---|---|---|---|
| RN hours per resident per day | **28 minutes** | 36 minutes | 40 minutes |

11  (Source: California Department of Public Health.)

12

13  23. According to information provided by the California Department of Public Health, RECHE CANYON

14  has a history of exceeding the statewide averages for number of complaints, survey deficiencies, and

15  enforcement actions, which is illustrated by the following chart:

16

17
18
19
20
21

|  |  | **RECHE CANYON** | **CALIFORNIA AVERAGE** |
|---|---|---|---|
| 2022 | Complaints/Reported Incidents | 45 | 40 |
| 2021 | Complaints/Reported Incidents | 74 | 43 |
| 2020 | Complaints/Reported Incidents | 60 | 45 |
| 2019 | Survey Deficiencies | 35 | 28 |

22  (Source: California Department of Public Health.)

23

24  **STATE PROTECTION FROM ELDER ABUSE**

25

26  24. Plaintiffs are informed and believe, and based thereon allege, that Defendants were and are required to

27  provide skilled nursing care, room and board, twenty-four-hour supervision, and personal care and

28  assistance to the residents. Care and supervision required of Defendants included custodial care and

8

**COMPLAINT**

services, physician services, skilled nursing services, dietary services, pharmaceutical services, and activities services as more specifically described in 22 California Code of Regulation § 72301, *et seq.*

25. It is well known and has been expressly noted by the California Legislature due to its adoption of Welfare and Institutions Code § 15600(a)-(d) that the elderly segment of the population is particularly vulnerable to various forms of abuse and neglect. Physical infirmity or mental impairment, such as those experienced by Mrs. BERGLOF, often place the elder in a dependent and vulnerable position. At the same time, such infirmity and dependence leave the elderly, such as Mrs. BERGLOF, incapable of protecting themselves, or asking for help or protection.

26. Recognizing the problems described in the preceding paragraph, the California legislature promulgated the Elder Abuse and Dependent Adult Civil Protection Act ("EADACPA"), codified in Welfare and Institutions Code § 15600. Pursuant to additions, the California legislature found and declared that infirm, elderly, and dependent adults are a disadvantaged population, and that few civil cases are brought in connection with their abuse due to the problems of proof and delays, plus the lack of incentive to prosecute such suits.

27. The EADACPA defines an "elder" as any person residing in California who is an adult sixty-five (65) years of age or older, and defines "abuse of an elder" as either:

      a. Physical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering; or

      b. The deprivation by a care custodian of goods or services necessary to avoid physical harm or mental suffering. (Welfare & Institutions Code § 15610.07.)

28. Physical abuse includes, but is not limited to, "unreasonable physical constraint," "prolonged or continual deprivation of food or water," or "use of a physical or chemical restraint or psychotropic medication" for punishment, for a period beyond that for which the medication was ordered by a physician, or for any purpose not authorized by a physician. (Welfare and Institutions Code § 15610.63.)

29. Neglect means "the negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise," and includes, but is not limited to, "failure to assist in personal hygiene, or in the provision of

9

**COMPLAINT**

food, clothing, or shelter," "failure to provide medical care for physical and mental health needs," "failure to protect from health and safety hazards," or "failure to prevent malnutrition or dehydration." (Welfare and Institutions Code § 15610.57.)

## DECEDENT TERESA BERGLOF'S INJURIES

30. TERESA BERGLOF was first admitted as a resident to Defendants' Skilled Nursing Facility, RECHE CANYON REGIONAL REHAB CENTER ("RECHE CANYON") on or about September 10, 2021. Mrs. BERGLOF was seventy-three (73) years old at the time of her admission to RECHE CANYON.

31. Mrs. BERGLOF was admitted to RECHE CANYON with conditions that made her totally dependent on care. Mrs. BERGLOF was admitted to RECHE CANYON for care, treatment, and supervision in light of her then-existing mental and physical condition.

32. Upon admission, RECHE CANYON assessed Mrs. BERGLOF as being dependent for activities of daily living (ADLs).  For example, Mrs. BERGLOF's MDS, completed on September 17, 2021, seven (7) days after admission, indicated that she was totally dependent on staff, with a 2-person assist, for bed mobility, toilet use, and personal hygiene.  Additionally, she required 1-person assist for transfers and eating.  Further, Mrs. BERGLOF was always incontinent of bowel and bladder.

33. Defendants, as care custodians to Mrs. BERGLOF, were on notice of their duty to provide for Mrs. BERGLOF's basic needs of daily living which she could not otherwise provide for herself. In fact, Defendants knew that it was for this reason that Mrs. BERGLOF was admitted to Defendants' facility in the first place. Defendants knew that Mrs. BERGLOF had declines in functional activity and mobility, and also knew Mrs. BERGLOF was virtually totally dependent on caregivers for a multitude of activities of daily living, including bed mobility, toilet use, and personal hygiene.

34. Despite their acute awareness of their duty and the risks posed to Mrs. BERGLOF, Defendants nonetheless recklessly neglected her.  Rather than adequately provide the care and treatment that Mrs. BERGLOF desperately needed, Defendants willingly neglected her needs and left her unsupervised and unmonitored for extended periods of time for their own convenience. This was due to the fact that Defendants intentionally understaffed their facility to cut expenses and generate more profits in

10

**COMPLAINT**

operation of their nursing home. Because RECHE CANYON did not have enough staff to care for Mrs. BERGLOF as medically necessary, Defendants egregiously and unlawfully abandoned her and left her unsupervised for hours at a time for their own convenience and benefit, despite knowing that such practice is both a form of abuse and was a foreseeable consequence of the chronic understaffing at RECHE CANYON. Additionally, as a direct result of lack of available staff, despite Mrs. BEGLOF's need for 2-person assist, RECHE CANYON staff consistently only provided 1-person assist, increasing her risk for friction and sheer, which additionally increased her risk for the development of skin breakdown.  As a direct result, Mrs. BERGLOF suffered severe injury.

35. A weekly wound evaluation completed on September 11, 2021, indicated that Mrs. BERGLOF was admitted with a right buttock stage II pressure injury and a left buttock stage II pressure injury. Additionally, it was noted on her September 17, 2021, MDS that Mrs. BERGLOF was admitted with two, stage II pressure injuries.  Per her November 3, 2021, weekly wound evaluation, these pressure injuries healed.  Additionally, Mrs. BERGLOF's November 4, 2021, MDS indicated that she was free of skin breakdown.  Not only does this show that Mrs. BERGLOF had the ability to heal, but it also put RECHE CANYON on notice that she was at increased risk for developing pressure injuries.

36. Per Mrs. BERGLOF's MDS, completed on December 18, 2021, she had developed multiple pressure injuries, all of which were not present on admission, and were the result of RECHE CANYON's neglect.  Mrs. BERGLOF had an unstageable pressure injury covered in slough and/or eschar, and two deep tissue injuries.

37. During Mrs. BERGLOF's residency to RECHE CANYON, she had the following skin issues:
   a. Right Buttock pressure injury
      i. 09/11/2021: 7.0 x 3.0 x 0.0, stage II
      ii. 09/15/2021: 7.0 x 3.0 x 0.1, stage II – 100% granulation tissue, wound edges stable and intact and periwound is clear with redness. There is scant serosanguinous drainage with no s/s of infection
      iii. No more documentation past 09/15/2021
      iv. 11/19/2021 – noted with heavy scar tissue to sacral coccyx area and bilateral buttocks
   b. Left buttock pressure injury
      i. 09/11/2021: 8.0 x 3.5 x 0.0, stage II
      ii. 09/15/2021: 8.0 x 3.5 x 0.1, stage II – 100% granulation tissue, wound edges stable and intact and the periwound is clear with redness.  There is scant serosanguinous drainage noted with no s/s of infection
      iii. 09/29/2021: 2.5 x 1.1 x 0.1, MASD, 100% granulation tissue
      **iv. 11/03/2021: Resolved**

11

**COMPLAINT**

     v.   11/19/2021 – noted with heavy scar tissue to sacral coccyx area and bilateral buttocks

  c.  Left peri-anus MASD
     i.   09/29/2021: 3.0 x 0.9 x 0.2, MASD, 100% granulation tissue
     ii.  11/03/2021: 4.5 x 1.0 x 0.1 cm, MASD, 60% granulation, 40% epithelial with moderate serous exudate, peri-wound unhealthy, no s/s of infection

  d.  Right peri-anus MASD
     i.   09/29/2021: 2.5 x 1.1 x 0.1, MASD, 100% granulation tissue
     ii.  11/03/2021: 7.5 x 1.5 x 0.1cm, MASD, 60% granulation, 40% epithelial with moderate serous exudate, peri-wound unhealthy, no s/s of infection

  e.  Right heel DTI
     i.   11/27/2021: 3.0 x3.0 x utd – suspected DTI, 100% eschar, purple and boggy
     ii.  12/12/2021: 4.0 x 6.0 x utd – suspected DTI, 100% necrotic tissue
     iii. 12/17/2021: 4.0 x 6.0 x utd – suspected DTI, 100% necrotic tissue
     iv. 12/21/2021: 4.0 x 6.0 x utd – suspected DTI, 100% necrotic tissue

  f.  Left heel DTI
     i.   11/27/2021: 3.0 x 6.0 x UTD – suspected DTI, 100% eschar, purple and boggy
     ii.  12/12/2021: 4.0 x 5.0 x UTD – suspected DTI, 100% necrotic tissue
     iii. 12/17/2021: 4.0 x 5 .0 x UTD – suspected DTI, 100% necrotic tissue
     iv. 12/21/2021: 4.0 x 5.0 x UTD – suspected DTI, 100% necrotic tissue

  g.  Sacrum Pressure Injury
     i.   11/19/2021 – noted with heavy scar tissue to sacral coccyx area and bilateral buttocks
     ii.  **12/12/2021: 14.0 x 14.0 x UTD – unstageable, 90% slough, 10% necrotic**
     iii. 12/17/2021: 14.0 x 14.0 x UTD – unstageable, 90% slough, 10% granulation tissue, odor and drainage pointing towards infection.
     iv. 12/21/2021: 27.0 x 27.0 x UTD – unstageable, 90% slough, 10% granulation tissue, copious amount off purulent drainage noted
     v.  *No skin notes from 12/21/2021 to 01/20/2022 (discharge to Loma Linda)*
     vi. **01/20/2022 – Loma Linda Hospital documentation: 10 x 20 cm, stage IV, with moderate amount of active bleeding**

38. On 12/21/2021, due to the severity of Mrs. BERGLOF's infected, unstageable sacral wound, Dr. Son ordered Vanco IV for 14 days. Despite this order, RECHE CANYON did not follow through with the order, and Mrs. BERGLOF did not receive this necessary antibiotic in order to fight of the brewing infection from her large, unstageable sacral pressure injury.

39. RECHE CANYON knew that Mrs. BERGLOF was at a high risk for skin breakdown. Her September 10, 2021, Braden score was 9, indicating a very high risk for developing pressure ulcers. Despite this high risk, the skin evaluation done on September 11, 2021, **only indicated buttock excoriation**. However, according to the care plan created on September 10, 2021, Mrs. BERGLOF had deep tissue injuries to both her right and left heels, and per weekly wound evaluations on September 11, 2021, she had stage 2 pressure injuries to her left and right buttock. If Mrs. BERGLOF had these additional

12

**COMPLAINT**

pressure injuries, these should have been noted in the skin evaluation completed on September 11, 2021. Additionally, the deep tissue injuries identified in the care plan were never mentioned or noted again until November 27, 2021.

40. This inconsistent documentation perpetuated an underlying problem with the facility. Mrs. BERGLOF was at high risk of developing pressure ulcers/injuries and purportedly already had buttock excoriation, stage 2 pressure injuries to her left and right buttock, and deep tissue injuries to her heels, however, the facility failed to maintain complete and accurate documentation. In fact, after Mrs. BERGLOF had a documented, large, unstageable pressure injury in December 2021, RECHE CANYON failed to maintain weekly skin sheets for all of January 2022. The facility even admitted to not having any skin sheets for January 2022 in a response to a request for January 2022 weekly wound evaluations. This lack of documentation is an indication that the facility was not able to properly care for Mrs. BERGLOF.

41. Additionally, Mrs. BERGLOF's discharge from Pomona Valley Hospital Medical Center on September 10, 2021, did not show evidence of significant skin deterioration. There were no discharge diagnoses of a pressure injury or excoriation, there was no mention of a pressure injury throughout the records, and there were no physician orders for significant wound care. The only evidence of minor skin breakdown was a physician order on September 6, 2021, to apply zinc Oxide and Castor oil – balsam Peru to the perineum/perianal area PRN after soiling.

42. If Mrs. BERGLOF was admitted with minor skin deterioration, records from RECHE CANYON show that the minor excoriations healed around November 3, 2021, and an unstageable pressure injury and two (2) deep tissue injuries developed as a result of the neglect of RECHE CANYON.

43. In fact, RECHE CANYON's own records indicated the following orders by location of wounds:
   a. Left Peri-Anus:
      i. 09/10/2021 Left Peri-Anus cleanse the area with normal saline pat dry apply Zinc Oxide Crease every shift for skin maintenance (p. 27/172)
      ii. 10/05/2021 Left Peri-anus cleanse the area with normal saline pat dry apply triade and leave open to air every shift for MASD (p. 43/172)
      iii. 11/19/2021 Left Peri-Anus cleanse the area with normal saline pat dry apply zinc oxide cream every shift for skin maintenance (p. 37/172)
   b. Right Peri-Anus:
      i. 10/05/2021 Right Peri-Anus cleanse with normal saline, pat dry, apply triad cream and leave open to air every shift for MASD (p. 44/172)

13

**COMPLAINT**

       ii. <u>11/19/2021 Right Peri Anus</u> cleanse with normal saline, pat dry, apply Zinc Oxide cream every shift for skin maintenance (p. 28/172)

  c. Right Inner Thigh:

       i. <u>11/19/2021 Right Inner Thigh</u> cleanse with normal saline, pat dry, apply zinc oxide cream every shift for <u>MASD</u> (p. 28/172)

  d. Left Buttock:

       i. <u>10/15/2021 Left buttock</u> cleanse with normal saline, pat dry, apply triade and cover with dry dressing everyday shift for MASD (p. 43/172)

  e. Left Heel:

       i. <u>11/27/2021 left heel</u> cleanse area with normal saline, pat dry, apply betadine, cover with ABD pad and kerlix everyday shift <u>for DTI</u> monitor for s/sx of infection (p. 27/172)

  f. Air Loss Mattress:

       i. <u>10/13/2021</u>Air Loss Mattress for Prevention/decubitus management (p. 26)

  g. Skin Integrity supplements and consults:

       i. <u>09/29/2021 wound consult</u> with skilled wound care surgical group until wounds resolve (p. 28/172)

       ii. <u>11/19/2021 zinc-220 capsule</u> (zinc sulfate) give 1 capsule enterally one time a day for <u>skin integrity</u> (p. 39/172)

       iii. <u>12/12/2021</u> vitamin c 250mg via gt gd x 60 days one time a day for <u>wound healing</u> for 3 months

44. The above orders reflect the minor state of Mrs. BERGLOF's wounds prior to December 2021. In fact, it appears that upon admission, Mrs. BERGLOF was being provided with zinc oxide for skin maintenance. Approximately 1 month into her admission to RECHE CANYON, Mrs. BERGLOF began to develop moisture associated skin deterioration (MASD) to multiple locations and by November 27, 2021, she had developed a deep tissue injury to her left heel. These wounds were not present on admission and were a direct result of the reckless neglect by RECHE CANYON's employees.

45. Despite RECHE CANYON's knowledge that Mrs. BERGLOF was a high risk for developing pressure injuries, they failure to provide interventions to help prevent the development and/or deterioration of wounds. RECHE CANYON's staff did not turn and reposition Mrs. BERGLOF every two hours, they did not provide a low air loss mattress until over one month into her admission, and they failed to ensure proper nutrition to provide her with the best possible outcome of healing once her wounds did develop.

46. On November 27, 2021, Mrs. BERGLOF was noted with a newly acquired pressure injury to the left and right heels. By December 12, 2021, her left and right heels were noted with 100% necrotic tissue.

14

**COMPLAINT**

47. By December 2, 2021, Mrs. BERGLOF's sacral wound was now documented as a stage III pressure injury with moderate sanguineous exudate. By December 17, 2021, Mrs. BERGLOF's wound had become an infected, unstageable pressure injury. The wound bed presented with 90% slough, copious amounts of purulent drainage with foul odor. It measured 15.0 x 15.0 x UTD.

48. On January 20, 2022, Mrs. BERGLOF was admitted to Loma Linda University Health Emergency department via ambulance due to rectal bleeding. Mrs. BERGLOF was also noted with a stage IV decubitus ulcer measuring 10.0 x 20.0 cm with moderate amount of active bleeding.

49. Mrs. BERGLOF was diagnosed with gastrointestinal bleed and sepsis and admitted to the ICU to undergo a blood transfusion. On February 4, 2022, Mrs. BERGLOF succumbed to her injuries, and passed away.

50. RECHE CANYON's failures included:
   a. Failure to timely turn and reposition Mrs. BERGLOF – promoting the development of a pressure injury
   b. Failure to timely provide a low air loss mattress – increasing pressure to boney prominences
   c. Failure to provide clear and accurate documentation – cutting off accurate communication between staff
   d. Failure to updated Care Plans – putting the resident at risk for not getting proper treatment
   e. Failure to provide nutritional support – promoting lack of protein support to help prevent the development of wounds
   f. Failure to provide two person assist – creating friction and sheer by only using 1 person

## JURISDICTION AND VENUE

51. This Court has jurisdiction over all causes of action asserted herein. Each Defendant has sufficient minimum contacts in the State of California or otherwise intentionally prevails itself of the California market through participation in general acute care facilities located in California and other activities, so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

52. Venue is proper in this County under CCP § 395 and Civil Code § 1750, et seq. because this Court is a court of competent jurisdiction as Defendant RECHE CANYON maintains its principal place of business in this county, a portion of Defendants' liability arose in this county, and the acts upon which

15

**COMPLAINT**

this action is based occurred in part in this county. In addition, RECHE CANYON obtained licenses to operate from the State of California and operate within this county through those licenses.

## FIRST CAUSE OF ACTION
## ELDER ABUSE AND NEGLECT
## [Plaintiff TERESA BERGLOF, by and through ANDREW E. V. EVERSON as Personal Representative of the Estate of TERESA BERGLOF Against All Defendants]

53. Plaintiffs refer to and incorporate herein by reference all preceding paragraphs above as though fully set forth herein.

54. TERESA BERGLOF was born on January 10, 1949, and was, at all relevant times, an "elder" as defined in Welfare and Institutions Code § 15610.27.

55. At all relevant times, Mrs. BERGLOF was in the care and custody of Defendants as a patient of the RECHE CANYON skilled nursing facility.

56. Defendants, and each of them, had a duty, under applicable federal and state laws (which were designed for the protection and benefit of residents such as Mrs. BERGLOF), under their own policies and procedures, and under the applicable standard of care to provide for and protect Mrs. BERGLOF from health and safety risks. Without limiting the generality of the foregoing, Defendants had, among other duties, the duty with respect to Mrs. BERGLOF's health and welfare to:

   a. Protect Mrs. BERGLOF from sustaining injuries to her person;
   b. Employ an adequate number of qualified personnel at the facility to meet the needs of the residents, including Mrs. BERGLOF;
   c. Develop and execute a comprehensive plan of care for skin integrity, including preventing the worsening of skin breakdown, and preventing skin wounds, in order to ensure patient safety.
   d. Maintain appropriate documentation for Mrs. BERGLOF as a patient at their skilled nursing facility;
   e. Properly provide caregivers, such as Certified Nursing Assistants, with appropriate

16

**COMPLAINT**

competencies and skills to care for a resident as provided by the care plan and nursing practices standard of care, during a regular activity of daily living changing.

   f.   Properly monitor, assess and document Mrs. BERGLOF's condition.

   g.   Providing for Mrs. BERGLOF' nutrition and hydration, and ensure that Mrs. BERGLOF did not suffer preventable weight loss and nutritional issues which could contribute to skin breakdown.

   h.   Treat Mrs. BERGLOF with dignity and respect, without abuse.

57.  During Mrs. BERGLOF's residency at RECHE CANYON, Defendants, and each of them, including the Defendants as agents, alter-egos and co-conspirators, failed to use the degree of care that a reasonable person in the same situation would have used in protecting Mrs. BERGLOF from health and safety hazards. In particular, Defendants failed to follow their own policy and plan of care for Mrs. BERGLOF, who had a high risk for pressure wounds, nutritional issues, and other injuries, by ensuring appropriate interventions were used to prevent such injuries. Defendants' deficient practices included the following:

   a.   Failure to employ an adequate number of qualified personnel at the facility to meet the needs of the residents, including Mrs. BERGLOF.

   b.   Failure to develop and execute a comprehensive plan of care for skin breakdown.

   c.   Failure to maintain appropriate documentation for Mrs. BERGLOF.

   d.   Failure to properly provide caregivers, including Mrs. BERGLOF's Certified Nursing Assistant, with appropriate competencies and skills to care for Mrs. BERGLOF as provided by the care plan and nursing practices standard of care.

   e.   Failure to ensure the facility was properly and effectively administered by following facility policies and procedures, including ensuring adequate nourishment and hydration, and ensuring resident dignity and prevention of neglect.

58.  As a result, due to their failure to consistently care for and supervise Mrs. BERGLOF, Mrs. BERGLOF suffered preventable injuries in the form of multiple, severe pressure wounds, and malnutrition and hydrational issues, which all developed during her residency at RECHE CANYON. In addition to RECHE CANYON's neglect and failure to meet Mrs. BERGLOF daily needs, these severe preventable

17

**COMPLAINT**

1 injuries ultimately caused her preventable death. Mrs. BERGLOF preventably passed away on

2 February 4, 2022 as a direct result of her injuries sustained as a patient at RECHE CANYON.

3 59. Defendants' violations jointly, separately, or in any combination, presented either imminent danger that

4 death or serious harm would result or substantial probability that death or serious physical harm would

5 result and were the direct proximate cause of Mrs. BERGLOF's injuries and death.

6 60. Defendants' conduct constitutes "neglect" as that term is defined in Welfare and Institutions Code §§

7 15610.63 and 15610.57 in that Defendants failed to use the degree of care that a reasonable person

8 having the custody of Mrs. BERGLOF would exercise.

9 61. Plaintiffs are informed and believe, and based thereon allege, that Defendants had a custom and

10 practice of violating these regulations. The following chart illustrates some (but not all) examples of the

11 myriad of complaints, deficiencies and citations issued to RECHE CANYON by the California

12 Department of Public Health for misconduct similar to that suffered by Mrs. BERGLOF, which also

13 put Defendants on notice of dangerous conditions at its facility which also affected Mrs. BERGLOF:

| | COMPLAINT/DEFICIENCY/CITATION ISSUED BY CDPH |
|---|---|
| 02/04/22 | Quality of Care/Treatment |
| 02/03/22 | Quality of Care/Treatment |
| 02/03/22 | Infection control |
| 02/03/22 | Quality of Care/Treatment |
| 02/03/22 | Infection control |
| 01/26/22 | Resident abuse |
| 01/26/22 | Quality of Care/Treatment |
| 01/18/22 | No Pressure Sore Precautions Taken By Facility |
| 01/13/22 | Quality of Care/Treatment |
| 12/24/21 | Quality of Care/Treatment |
| 12/20/21 | Quality of Care/Treatment |
| 12/08/21 | Quality of Care/Treatment |
| 12/08/21 | Infection control |
| 12/08/21 | Infection control |
| 12/08/21 | Quality of Care/Treatment |
| 11/16/21 | Quality of Care/Treatment |
| 11/08/21 | Quality of Care/Treatment |
| 10/26/21 | Quality of Care/Treatment |
| 10/12/21 | Resident neglect |
| 10/12/21 | Quality of Care/Treatment |
| 10/07/21 | Quality of Care/Treatment |
| 09/24/21 | Quality of Care/Treatment |

18

**COMPLAINT**

| 09/22/21 | Quality of Care/Treatment |
|----------|---------------------------|
| 09/21/21 | Resident abuse |
| 09/21/21 | Quality of Care/Treatment |
| 09/08/21 | Quality of Care/Treatment |
| 08/24/21 | Resident abuse |
| 08/24/21 | Quality of Care/Treatment |
| 08/24/21 | Infection control |
| 08/23/21 | Quality of Care/Treatment |
| 08/13/21 | Quality of Care/Treatment |
| 08/03/21 | Quality of Care/Treatment |
| 07/09/21 | Quality of Care/Treatment |
| 07/07/21 | Quality of Care/Treatment |
| 07/06/21 | Quality of Care/Treatment |
| 06/18/21 | Resident neglect |
| 06/18/21 | Quality of Care/Treatment |
| 06/15/21 | Quality of Care/Treatment |
| 06/14/21 | Quality of Care/Treatment |
| 06/13/21 | Quality of Care/Treatment |
| 06/13/21 | Resident abuse |
| 06/08/21 | Quality of Care/Treatment |
| 06/04/21 | Quality of Care/Treatment |
| 06/04/21 | Quality of Care/Treatment |
| 06/03/21 | Quality of Care/Treatment |
| 05/21/21 | Quality of Care/Treatment |
| 05/20/21 | Quality of Care/Treatment |
| 05/13/21 | Quality of Care/Treatment |
| 05/04/21 | Resident abuse |
| 05/04/21 | Quality of Care/Treatment |
| 04/29/21 | Resident abuse |
| 04/27/21 | Quality of Care/Treatment |
| 04/19/21 | Resident abuse |
| 04/15/21 | Resident abuse |
| 04/01/21 | Resident neglect |
| 04/01/21 | Quality of Care/Treatment |
| 03/30/21 | Quality of Care/Treatment |
| 03/15/21 | Quality of Care/Treatment |
| 03/08/21 | Resident abuse |
| 02/26/21 | Resident abuse |
| 02/26/21 | Quality of Care/Treatment |
| 02/24/21 | Resident abuse |
| 02/17/21 | Resident abuse |
| 02/12/21 | Resident abuse |
| 02/09/21 | Quality of Care/Treatment |
| 02/09/21 | Quality of Care/Treatment |
| 02/08/21 | Quality of Care/Treatment |

19

**COMPLAINT**

| 02/08/21 | Infection control |
| 02/03/21 | Quality of Care/Treatment |

(Source: California Department of Public Health.)

62. Defendants' continuous and regular practice of violating federal and state regulations is congruent to the actions of the defendant in *Fenimore*, wherein the court held that a hospital's alleged pattern and practice of violating staffing regulations, in conjunction with allegations that the understaffing was the cause of an elderly patient's injury, was sufficient to state a viable cause of action for elder abuse. (See *Fenimore v. Regents of the University of California* (2016) Cal.App. Lexis 231.)

63. As a direct result of each Defendant's neglect, Mrs. BERGLOF was injured in her person and health, and sustained serious physical injuries and damages, and an untimely death.

64. By engaging in the conduct, neglect and abuse, as alleged herein, despite the known risk to elder adults, including Mrs. BERGLOF, Defendants' actions were malicious, oppressive, fraudulent and/or reckless as defined in Welfare and Institutions Code § 15657, and subjected Mrs. BERGLOF to unjustifiable physical pain and mental suffering. Defendants' acts were despicable and done with a conscious disregard of the rights and safety of Mrs. BERGLOF, despite Defendants' acute knowledge of Mrs. BERGLOF's health condition. The sheer number and perpetual nature of the violations of Mrs. BERGLOF's rights here during the course of her stay at Defendants' facility provides sufficient basis to infer that Defendants were acting with a conscious disregard of his rights and safety during this time. (*See Jarman v. HCR Manorcare, Inc.*, No. G051086, Cal. Ct. App. (March 14, 2017).) Defendants knowingly continued with their dereliction of duty until Mrs. BERGLOF eventually suffered harm.

65. As a result of Defendants' reckless neglect as alleged, Plaintiff, on behalf of Mrs. BERGLOF, seek all damages to which she is entitled according to proof at trial.

66. As a result of the recklessness, malice, oppression or fraud herein alleged, Plaintiffs are entitled to an award of punitive damages pursuant to Civil Code § 3294, in addition to the other remedies available to Plaintiff. Defendants' conscious disregard of Mrs. BERGLOF' rights and safety is sufficient to support a finding of malice or oppression, because such conduct is also deemed despicable. *Jarman* found that the defendant committed a combined 382 violations of the plaintiff's rights protected by state and federal law during the course of his three-month stay at the defendant's facility, and that such conduct

20

**COMPLAINT**

was indeed "despicable" and subjected the plaintiff to "cruel and unjust hardship." (*See Jarman, supra.*) *Jarman* rejected the defendant's argument that a showing that it acted in "conscious disregard" of the plaintiff's rights and safety would, at most, be considered "reckless." Similar to *Jarman*, Defendants' continual and compound violations of Mrs. BERGLOF's statutory rights under California Health and Safety Code § 1430(b) constitute "despicable" conduct, such that Plaintiffs are entitled to punitive damages against Defendants.

## SECOND CAUSE OF ACTION
## WILLFUL MISCONDUCT
### [Plaintiff TERESA BERGLOF, by and through ANDREW E. V. EVERSON as Personal Representative of the Estate of TERESA BERGLOF Against All Defendants]

67.  Plaintiffs refer to and incorporate herein by reference all preceding paragraphs above as though fully set forth herein.

68.  To establish liability for willful misconduct, Plaintiffs must prove, by a preponderance of the evidence, the following: 1) Defendant had actual or constructive knowledge of the peril to be apprehended; 2) Defendant had actual or constructive knowledge that injury is a probable result of the dangers; and 3) Defendant consciously failed to act to avoid the peril. (*Nazar v. Rodeffer* (1996) 184 Cal. App. 3d 546, 552.)

69.  Defendants knew of the peril to be apprehended, and knew that injury was a probable result of the dangers. Defendants were explicitly aware, as evidenced by their own medical records, that Mrs. BERGLOF was a vulnerable nursing home patient who suffered from a number of other physical limitations. They also knew that Mrs. BERGLOF was, by their own standards and assessments, a risk for skin breakdown and nutritional issues, and required extensive assistance with several facets of daily living. Defendants also knew that Mrs. BERGLOF's care plan included a number of injury-prevention procedures, and also employed their own policies and procedures regarding skin wound prevention and malnutrition prevention, including but not limited to continual supervision, assistance with ADLs, and utilizing 2-person assist for bed mobility. These standards, policies, and procedures

21

## COMPLAINT

1   were explicitly created to protect Mrs. BERGLOF against preventable injury.

2   70.  Further, in recognition that residents of their facilities suffered from conditions which left them prone

3   to suffering health and safety hazards, Defendants, and each of them, assumed policies and federal and

4   state regulatory duties to protect residents from preventable harm, as set forth above. These formal

5   regulations and written policies were adopted in the event that if inquiry were made of Defendants'

6   policies during a state or federal inspection, the requirements of the inspection agency could thereby

7   be met. Defendants knew that any failure to properly follow these policies and regulations posed the

8   high probability that they would be unable to prevent the injuries suffered by Mrs. BERGLOF.

9   71.  However, Defendants consciously failed to act to avoid the peril. Despite such knowledge, duties and

10   promises, these policies and regulations were not followed or implemented at RECHE CANYON to

11   prevent the harms suffered by Mrs. BERGLOF. Defendants, and each of them, knowingly adopted

12   practices which they knew would lead to patient harm, including but not limited to the following: (1)

13   failing to employ an adequate number of qualified personnel at the facility to meet the needs of the

14   residents, including Mrs. BERGLOF; (2) failing to develop and execute a comprehensive plan of care

15   for skin breakdown; (3) failing to maintain appropriate documentation for Mrs. BERGLOF; (4) failing

16   to properly provide caregivers, including Mrs. BERGLOF's Certified Nursing Assistant, with

17   appropriate competencies and skills to care for Mrs. BERGLOF as provided by the care plan and

18   nursing practices standard of care; and (5) failing to ensure the facility was properly and effectively

19   administered by following facility policies and procedures, including ensuring skin integrity, adequate

20   nourishment and hydration, and ensuring resident dignity and prevention of neglect.

21   72.  Defendants, and each of them, recklessly and intentionally breached their duty of care to Mrs.

22   BERGLOF.

23   73.  By engaging in the conduct, neglect and abuse, as alleged herein, despite the known risk to elder

24   adults, including Mrs. BERGLOF, Defendants' actions were malicious, oppressive, fraudulent and/or

25   reckless, and subjected Mrs. BERGLOF to unjustifiable physical pain and mental suffering. The sheer

26   number and perpetual nature of the violations of Mrs. BERGLOF's rights here during the course of her

27   stay at Defendants' facility provides sufficient basis to infer that Defendants were acting with a

28   conscious disregard of her rights and safety during this time. (*See Jarman, supra.*)

22

**COMPLAINT**

74. As a direct and proximate result of the foregoing, Mrs. BERGLOF suffered severe personal injury and emotional harm in a sum according to proof at trial.

75. As a further direct and proximate result of the foregoing, Mrs. BERGLOF incurred medical expenses in a sum according to proof at trial.

76. By virtue of the foregoing, defendants and each of them have acted despicably. Defendants and each of them have acted with malice and oppression and/or recklessness. By virtue of the foregoing, an award of punitive damages in a sum according to proof at trial is justified, warranted, and appropriate as to each defendant.

## THIRD CAUSE OF ACTON

## WRONGFUL DEATH

**[Plaintiff KENNETH BERGLOF, Individually and as Heir of TERESA BERGLOF, deceased Against All Defendants]**

77. Plaintiffs refer to and incorporate herein by reference all preceding paragraphs above as though fully set forth herein.

78. Defendants were the care custodians of TERESA BERGLOF during her admission at the RECHE CANYON skilled nursing facility, and thereby owed her a duty to exercise the degree of care that a reasonable person in a like position would exercise. At all times mentioned herein, Defendants owed a duty to use ordinary care and such other care as required by law, in the treatment and protection of their patient, Mrs. BERGLOF.

79. At the time of Mrs. BERGLOF's residency at RECHE CANYON, there were also statutory and regulatory duties which set forth the standard of care required at the facility, as set forth above.

80. As set forth above, Defendants breached the duty of care owed to Mrs. BERGLOF. Defendants failed to use that degree of care that a reasonable person would use in providing for the basic needs and treatment of Mrs. BERGLOF and failed to comply with the basic statutory and regulatory standards of care.

23

**COMPLAINT**

81. As a direct and proximate result of the wrongful conduct, abuse and neglect as detailed above, Mrs. BERGLOF suffered a preventable death on February 4, 2022.

82. As a result of the acts of Defendants, and each of them, as alleged above, Mrs. BERGLOF died, and Plaintiff KENNETH BERGLOF lost the love, companionship, comfort, affection, and society of his wife, for which he seeks general damages.

83. As a further result of the acts of Defendants, and each of them, as alleged above, Plaintiff incurred funeral and burial expenses for the death of Mrs. BERGLOF, for which he seeks special damages.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE
### [Plaintiff TERESA BERGLOF, by and through ANDREW E. V. EVERSON as Personal Representative of the Estate of TERESA BERGLOF Against All Defendants]

84. Plaintiffs refer to and incorporate herein by reference all preceding paragraphs above as though fully set forth herein.

85. Defendants were the care custodians of TERESA BERGLOF during her admission at the RECHE CANYON skilled nursing facility, and thereby owed her a duty to exercise the degree of care that a reasonable person in a like position would exercise. At all times mentioned herein, Defendants owed a duty to use ordinary care and such other care as required by law, in the treatment and protection of their patient, Mrs. BERGLOF.

86. At the time of Mrs. BERGLOF's residency at RECHE CANYON, there were also statutory and regulatory duties which set forth the standard of care required at the facility, as set forth above.

87. As set forth above, Defendants breached the duty of care owed to Mrs. BERGLOF. Defendants failed to use that degree of care that a reasonable person would use in providing for the basic needs and treatment of Mrs. BERGLOF and failed to comply with the basic statutory and regulatory standards of care.

24

**COMPLAINT**

88. As a proximate result of the wrongful conduct, abuse and neglect as detailed above, Mrs. BERGLOF was harmed, and her overall health condition drastically declined and she eventually and preventably died on February 4, 2021.

89. As a result of the acts of Defendants, and each of them, as alleged above, Plaintiff seeks all special and general damages recoverable in a negligence survivorship action, including damages related to the medical expenses caused by the subject incident. Additionally, as the decedent's personal representative, Plaintiff seeks the damages recoverable pursuant to Code of Civil Procedure section 377.34, which include the pre-death damages for pain, suffering, and disfigurement of Mrs. BERGLOF.

## FIFTH CAUSE OF ACTION
## VIOLATION OF PATIENT'S RIGHTS
## PURSUANT TO HEALTH AND SAFETY CODE § 1430(b)
## [Plaintiff TERESA BERGLOF, by and through ANDREW E. V. EVERSON as Personal Representative of the Estate of TERESA BERGLOF Against Defendant RECHE CANYON only]

90. Plaintiffs refer to and incorporate herein by reference all preceding paragraphs above as though fully set forth herein.

91. Health and Safety Code §1430(b) provides in relevant part that a former resident of a skilled nursing facility may bring an action against the licensee of a facility who violates any of the rights of the residents as set forth in the Patient's Bill of Rights or any other state or federal statute. At the time of her stay at RECHE CANYON, Mrs. BERGLOF was an elderly resident of Defendants' skilled nursing facility and, as such, was entitled to the protection of the Nursing Home Patient's Bill of Rights and other state and federal regulations. Defendants, as owners, operators, managers, and alter-egos of the subject licensee had a mandatory duty to ensure that Mrs. BERGLOF's rights were not violated.

92. For the reasons set forth above and incorporated herein by reference, and for further reasons as will be presented at trial, Defendants, through the operation of their skilled nursing facility, systemically violated a myriad of federal and state regulations governing the operation of skilled nursing facilities

25

**COMPLAINT**

1    in the State of California. The violations of these regulations also amount to violations of Health &
2    Safety Code § 1430(b).

3    93. In particular, Defendant RECHE CANYON knowingly failed to ensure that Mrs. BERGLOF received
4        treatment and care in accordance with professional standards of practice, the comprehensive care plan,
5        and her choices, in violation of 22 CCR §§ 72329(a) and 72501(e), 42 CFR §§ 483.21(b), 483.25(c)
6        and 483.30, Health & Safety Code §§ 1599.1(a), 1276.5(a), and 42 USC § 1396r(b)(8).

7    94. Defendant RECHE CANYON knowingly failed to provide adequate nursing services to Mrs.
8        BERGLOF, including planning of her care, development of her care plan, and implementation of her
9        care plan, in violation of 22 CCR §§ 72311 and 72523, and 42 CFR § 483.25(g). Defendant further
10       failed to staff RECHE CANYON with a sufficient number of qualified care personnel, in violation of
11       42 CFR § 483.35.

12   95. Defendant RECHE CANYON failed to maintain accurate clinical records for Mrs. BERGLOF, in
13       violation of 42 CFR § 483.70(i)(1).

14   96. Defendant RECHE CANYON knowingly failed to provide sufficient nursing staff with appropriate
15       competencies and skills to provide nursing services to assure resent safety, in violation of 22 CCR §§
16       72329(a) and 72501(e), 42 CFR § 483.30, Health & Safety Code §§ 1599.1(a), 1276.5(a), and 42 USC
17       § 1396r(b)(8).

18   97. As a result, Mrs. BERGLOF was harmed and passed away.

19   98. Pursuant to Health and Safety Code §1430(b), in addition to all other remedies provided by law,
20       Plaintiff is entitled to injunctive relief and statutory damages against Defendant RECHE CANYON for
21       violation of Mrs. BERGLOF's rights, as well as costs and attorneys' fees incurred in this proceeding.

22   99. Plaintiff will seek to amend this cause of action or add additional causes of action once other
23       violations of Health and Safety Code § 1430(b) are known.

24   ///
25   ///
26   ///
27   ///
28   ///

**COMPLAINT**

1

## **PRAYER FOR RELIEF**

2

3      WHEREFORE, on the First Cause of Action for Elder Abuse and Neglect, Plaintiffs pray for

4  judgment and damages as follows:

5          1.      For general damages according to proof;

6          2.      For special damages according to proof;

7          3.      For attorney's fees and costs under Welf & I C § 15657(a);

8          4.      For punitive damages;

9          5.      For costs of suit; and

10         6.      For such other and further relief as the Court deems just and proper.

11

12      WHEREFORE, on the Second Cause of Action for Willful Misconduct, Plaintiffs pray for

13  judgment and damages as follows

14         1.      For general damages according to proof;

15         2.      For special damages according to proof;

16         3.      For attorney's fees and costs under Welf & I C § 15657(a);

17         4.      For punitive damages;

18         5.      For costs of suit; and

19         6.      For such other and further relief as the Court deems just and proper.

20

21      WHEREFORE, on the Third Cause of Action for Wrongful Death, Plaintiffs pray for judgment and

22  damages as follows:

23         1.      For general damages according to proof;

24         2.      For special damages according to proof; and

25         3.      For such other and further relief as the Court deems just and proper.

26

27      WHEREFORE, on the Fourth Cause of Action for Negligence, Plaintiffs pray for judgment and

28  damages against all Defendants as follows:

27

## **COMPLAINT**

1.   For general damages according to proof;

2.   For special damages according to proof;

3.   For punitive damages;

4.   For costs of suit; and

5.   For such other and further relief as the Court deems just and proper.


WHEREFORE, on the Fifth Cause of Action for Violations of Patient's Rights, Plaintiffs pray for judgment and damages on each of these causes of action as follows:

1.   For statutory damages under Health & Safety Code § 1430(b);

2.   For attorney's fees and costs pursuant to law and including, but not limited to, the equitable private attorney general doctrine, and the Code of Civil Procedure § 1021.5 as well as the provisions of Health and Safety Code §1430(b);

3.   For a Court order requiring that the skilled nursing facility Defendant immediately cease acts that constitute violations of Health & Safety Code § 1430(b), as alleged herein, and to enjoin the skilled nursing facility Defendant from continuing to engage in any such acts or practices in the future;

4.   For the appointment of a receiver or special master to enforce the injunctive relief mentioned in the immediately preceding paragraph;

5.   For costs of suit; and

6.   For such other and further relief as the Court deems just and proper.

//
//
//
//
//
//
//
//

28

**COMPLAINT**

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury of all issues triable by jury.

Respectfully submitted,

Dated: January 4, 2022                              YEROUSHALMI & YEROUSHALMI

By: _____

BEN YEROUSHALMI,
Attorney for Plaintiff

29

**COMPLAINT**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

    I am over the age of 18 and not a party to the within action; I am employed by PLEISS SITAR MCGRATH GATES & AJELLO, 2875 Michelle Drive, Suite 150, Irvine, CA 92606. My email address is: mwesevich@pleisslaw.com

    On August 10, 2023, I served the foregoing document(s) described as NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) [DIVERSITY].

☐    by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

SEE ATTACHED SERVICE LIST

☐    **BY MAIL:** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of PLEISS SITAR MCGRATH GATES & AJELLO, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the practice of PLEISS SITAR MCGRATH GATES & AJELLO for collection and processing correspondence for mailing with the United States Postal Service and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☒    **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed above. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

☐    **BY OVERNIGHT DELIVERY:** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of PLEISS SITAR MCGRATH GATES & AJELLO, and addressed as shown on the attached service list, for collection and delivery to a courier authorized to receive said documents, with delivery fees provided for. I am readily familiar with the practices of PLEISS SITAR MCGRATH GATES & AJELLO for collection and processing of documents for overnight delivery and said envelope(s) will be deposited for receipt on said date in the ordinary course of business.

☐    **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the offices of the addressee(s).

☒    (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 10, 2023, at Irvine, California.



_____
MARY WESEVICH

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) [DIVERSITY]

MUNI-9795 / 1168984.1

**SERVICE LIST**

**Re:  Berglof, etc., et al. v. Reche Canyon, etc., et al.**
**SBSC Case No.  CIVSB2300062**

| | |
|---|---|
| Ben Yeroushalmi, Esq.<br>Tanaz Rostami, Esq.<br>Preston Kim, Esq.<br>YEROUSHALMI & YEROUSHALMI<br>9100 Wilshire Blvd., Ste. 240W<br>Beverly Hills, CA 90212<br>(310) 623-1926 (O)<br>(310) 623-1930 (F)<br>ben@yeroushalmilaw.com;<br>sasha@yeroushalmilaw.com;<br>preston@yeroushalmilaw.com;<br>olivia@yeroushalmilaw.com;<br>devon@yeroushalmilaw.com;<br>lacy@yeroushalmilaw.com | Attorneys for Plaintiffs TERESA BERGLOF, by and through ANDREW E. V. EVERSON as Personal Representative of the Estate of TERESA BERGLOF; KENNETH BERGLOF, Individually and as Heir of TERESA BERGLOF, deceased |

PLEISS SITAR
McGrath Gates & Ajello

2

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) [DIVERSITY]